IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD B. COLVIN, debtor, | ) | CV. NO. 5:13-CV-438-DAE |
| | ) | Bankr. No. 12-ap-05106 |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMEGY MORTGAGE COMPANY, | ) | |
| L.L.C., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

MEMORANDUM OPINION AND ORDER VACATING BANKRUPTCY
COURT ORDER AND REMANDING TO BANKRUPTCY COURT

Debtor Richard B. Colvin ("Colvin") appeals the bankruptcy court's

order dismissing with prejudice Colvin's second adversary proceeding against

Appellee Amegy Mortgage Company ("Amegy").  (Dkt. # 3.)  For the foregoing

reasons, the Court **VACATES** the bankruptcy court's dismissal order and

**REMANDS** to the bankruptcy court for proceedings consistent with this order.

BACKGROUND

The instant appeal involves a long, narrow tract of land of

approximately 47.84 acres in Hunt, Texas (the "Property") owned by Colvin.

(Dkt. # 3 ¶¶ 1–2.)  In December 2005, Colvin obtained a loan from Amegy.  (Id.

1

¶ 1.)  To secure payment on the loan, Colvin granted a lien to Amegy on the Property.  (Id.)

In November 2006, the note securing the loan was renewed and extended.  (Id. ¶ 5.)  This time, however, Colvin granted a lien to Amegy only for the front half of the Property ("Home Tract").  (Id.)  The back half of the Property ("Cell Tower Tract") was subject to a lease for a cell tower and was unencumbered.  (Id. ¶ 2.)  According to Colvin, the Cell Tower Tract has no road access except for over the remainder of the Home Tract.  (Id.)

Colvin contends that on January 19, 2007, Amegy executed and recorded a Release of Lien, which provided, "In consideration of the full and final payment of the Note, Holder of the Note and Lien releases the Property from the lien from any and all other liens against the Property that secured payment of the Note."  (Id. ¶ 6.)  Colvin maintains that on February 23, 2011, Amegy recorded a "Corrected Deed of Trust," which served to perfect Amegy's security interest in the Home Tract for the loan extended in November 2006.[1]  (Id. ¶ 9.)[2]

---

[1] Presumably, Amegy filed the Release of Lien for the 2005 loan that encumbered the entire Property and then later filed a Corrected Deed of Trust for the 2006 loan that only encumbered the Home Tract.  (See Motion to Dismiss Hr'g Tr. 6:12–7:9 Nov. 27, 2012 (recounting Amegy's reasons for filing Release of Lien and Corrected Deed of Trust).)

[2] Although Colvin alleges that Amegy recorded a Release of Lien and a Corrected

I.      Bankruptcy Case

On April 4, 2011, Colvin filed for Chapter 12 bankruptcy.  (Id. ¶ 10.)
Colvin listed Amegy as a secured creditor with a valid lien on the Home Tract
owned by Colvin.  (Id.)  During the pendency of the bankruptcy action, Amegy
filed a motion seeking relief from the automatic bankruptcy stay (the "Lift Stay
Motion") to conduct a foreclosure sale.  (Bankr. Case No. 11-51241-lmc
[hereinafter Bankr.] Dkt. # 27.)[3]  Colvin filed a response opposing Amegy's Lift
Stay Motion.  (Bankr. Dkt. # 30.)

On June 3, 2011, however, Colvin, Amegy, and the Chapter 12
Trustee agreed that if Colvin could not sell the Home Tract in six months, then
Amegy could foreclose its deed of trust lien against the Home Tract.  This
agreement was memorialized in an Agreed Order, which was submitted to the
bankruptcy court.[4]  On June 7, 2011, in light of the Agreed Order, the bankruptcy

Deed of Trust, the record he tendered on appeal contains no evidence that Amegy
made such recordings.  However, the transcript of a hearing on Amegy's Motion to
Dismiss in Adversary Proceeding II reveals that Amegy admitted to making such
recordings.  (See Motion to Dismiss Hr'g Tr. 6:12–7:9 Nov. 27, 2012.)

[3] All documents referred to in the bankruptcy docket appear in the appellate record;
however, for clarity, the Court will refer to the respective bankruptcy docket
numbers.

[4] The parties did not provide a copy of their Agreed Order that was submitted to
the bankruptcy court, and the bankruptcy court docket does not contain a copy.

court entered the Agreed Order Terminating Stay.  (Bankr. Dkt. # 35.)  Colvin

amended his chapter 12 bankruptcy plan to include the following language:

> **Class 6. Amegy Mortgage Company LLC:**
> On June 7, 2011, this Court entered an Agreed Order conditioning the
> automatic stay by and between AMC and the captioned debt related to
> the debt and real property that is subject of that Motion for Relief
> from Stay filed by AMC.  The Agreed Order was entered as document
> # 35 on the Court's docket.  The Agreed Order essentially gives the
> Debtor until January 3, 2012 to sell the 23.10 acres of real property
> that Colvin has claimed as his homestead. The Agreed Order states
> that if AMC is not paid in full prior to January 3, 2012, AMC is
> allowed to proceed with a non-judicial foreclosure sale that will be
> noticed and scheduled for January 3, 2012.

(Bankr. Dkt. # 104).

On December 8, 2011, the bankruptcy court confirmed Colvin's

chapter 12 bankruptcy plan.  (Bankr. Dkt. # 146.)

Six months later, Colvin had not sold the Home Tract.  On February 7,

2012, Amegy posted the Home Tract for a non-judicial foreclosure sale.  On

February 29, 2012, Amegy foreclosed on the Home Tract.  (See Dkt. # 3 ¶ 18.)

II.   First Adversary Proceeding

On March 13, 2012, less than a month after Amegy's foreclosure on

the Home Tract, Colvin filed an adversary proceeding ("Adversary Proceeding I")

in bankruptcy court seeking a declaration of an easement across the Home Tract.

(Bankr. Adversary Case No. 12-05032 ("Adversary I") Dkt. # 1.)  On May 2, 2012,

4

Amegy filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that res judicata barred Colvin's easement claim. (Adversary I Dkt. # 4.) Under Local Bankruptcy Rule 7012, Colvin had twenty-one days to respond to Amegy's Motion to Dismiss. Colvin did not file a response.

On May 31, 2012, Bankruptcy Judge Leif Clark entered an order dismissing with prejudice Colvin's adversary proceeding against Amegy. (Adversary I Dkt. # 5.) Colvin did not appeal the bankruptcy court's order.

Nearly a year later on May 29, 2013, Colvin filed a Motion for Relief from Order Dismissing Adversary Proceeding with Prejudice. (Adversary I Dkt. # 7.) He filed an Amended Motion for Relief on June 18, 2013. (Adversary I Dkt. # 11.) Colvin asserted that the order dismissing his adversary proceeding against Amegy should not have been "with prejudice" because it was the result of a clerical error and, in the alternative, the bankruptcy court did not have constitutional authority to enter a final order in a non-core proceeding. (See id. ¶ 7.) Amegy filed a response arguing that Judge Clark had purposefully dismissed the adversary proceeding with prejudice and that Colvin had waived any argument challenging the bankruptcy court's constitutional, adjudicative authority. (Adversary I Dkt. # 12 ¶¶ 13–24.)

By the time Colvin had filed his Rule 60 Motion, Judge Clark had

retired.  Bankruptcy Judge Craig Gargotta, Judge Clark's successor, held a hearing

on Colvin's Rule 60 Motion.  After the hearing, the court denied Colvin's Rule

60(b) motion.  (Adversary I Dkt. # 15.)

On July 17, 2013, Colvin sought reconsideration of the denial order

(Adversary I Dkt. # 17; see also Adversary I Dkt. # 18), which the bankruptcy

court later denied (Adversary Dkt. # 19).  The court held that the entry of the

dismissal order was a "deliberate decision" and not the result of a clerical error.

(Id. at 2.)  Colvin then filed an appeal challenging the bankruptcy court's denial of

Colvin's Rule 60 Motion.  (Adversary I Dkt. # 21.)[5]

III.   Second Adversary Proceeding

Remaining resilient and undeterred, Colvin filed another adversary

proceeding ("Adversary Proceeding II") seeking to enforce the easement that he

asserted in Adversary Proceeding I on August 2, 2012—only a few months after

Judge Clark dismissed Adversary Proceeding I with prejudice but well before

Colvin filed a Rule 60(b) motion in Adversary Proceeding I.  (Bankr. Adversary

Case No. 12-05106 ("Adversary II") Dkt. # 1 ¶¶ 14–19.)  Several months later, on

October 19, 2012, Colvin filed an Amended Complaint adding a claim to avoid

Amegy's lien and prior foreclosure sale on the Home Tract.  (Adversary II Dkt.

_____

[5] This appeal is also before the Court in Docket No. SA:13-CV-859-DAE.

# 12 ¶¶ 12–24.)

On November 2, 2012, Amegy filed a motion to dismiss Adversary Proceeding II.  (Adversary II Dkt. # 16.)  On November 23, 2012, Colvin filed a response.  (Adversary II Dkt. # 19.)

On November 27, 2012, Bankruptcy Judge John Ackard held a hearing on Amegy's Motion to Dismiss.  At the hearing, Amegy argued that res judicata barred both of Colvin's claims in Adversary Proceeding II.  (Motion to Dismiss Hr'g Tr. 12:24–14:23 November 27, 2012.)  First, Amegy asserted that Colvin's avoidance claim was precluded because Colvin had an opportunity to address any issues of the validity of Amegy's lien during the period of the motion to lift stay and failed to do so.  (Id. 12:8–13:15.)  Amegy also contended that Colvin's easement claim was the same claim that had been dismissed in Adversary Proceeding I.  (Id. 14:5–17.)  Colvin countered that he could not have challenged the validity of Amegy's lien after Amegy filed a motion to lift the automatic stay to conduct the foreclosure because there must be an adversary proceeding brought to avoid the lien.  (Id. 15:16–16:11.)  Colvin also disputed that res judicata barred his easement claim because the previous dismissal with prejudice was a clerical error.  (Id. 16:12–17:7.)

After hearing the parties' arguments, the court noted that it was "very

troubled" by Colvin's allegations, and "troubled by what appears to be an attempt to set aside previous orders." (<u>Id.</u> 24:20–22.)  The court continued:

> There ought to be some finality to orders.  There's times to appeal, there's time for motion for rehearing, there's even time under Rule 60(b), but none of those events that would satisfy Rule 60(b) have been alleged.
>
> And there's also an Equitable Doctrine of Laches.  And I really think it's just too late to go back and revisit matters which were, indeed, agreed upon in one instance, and certainly adjudicated in another.
>
> So, with respect to the property covered by the lift stay, the motion to dismiss will be granted.
>
> With respect to the easement, the motion to dismiss will be granted.

(<u>Id.</u> 24:23–25:11.)  Shortly thereafter, on December 5, 2012, the Court dismissed Adversary Proceeding II with prejudice.  (Adversary II Dkt. # 22.)

Colvin filed a motion for reconsideration on December 19, 2012 (Adversary II Dkt. # 26), which was summarily denied by the bankruptcy court on December 20, 2012 (Adversary II Dkt. # 27).

On January 3, 2013, Colvin appealed the bankruptcy court's dismissal of Adversary Proceeding II.  (Adversary II Dkt. # 29; Dkt # 1.)  This appeal is now before the Court.  Pursuant to the Court's briefing schedule (Dkt. # 2), Colvin filed his Opening Brief on June 6, 2013.  ("Opening Br.," Dkt. # 3.)  On July 11, 2013,

Amegy filed its Answering Brief.  ("Answering Br.," Dkt. # 6.)  On August 1,

2013, Colvin filed his Reply Brief.  ("Reply Br.," Dkt. # 14.)

STANDARD OF REVIEW

A district court reviews a bankruptcy court's findings of fact for clear

error.  In re Kennard, 970 F.2d 1455, 1457–58 (5th Cir. 1992) (citing In re

Multiponics, Inc., 622 F.2d 709, 713 (5th Cir. 1980)); Fed. R. Bankr. P. 8013.

Conclusions of law are reviewed de novo.  In re Kennard, 970 F.2d at 1458; In re

Stembridge, 394 F.3d 383, 385 (5th Cir. 2004).

DISCUSSION

Colvin presents twelve issues on appeal:

1.  The bankruptcy court erred in granting the motion to dismiss.

2.  The bankruptcy court erred in basing its dismissal "with respect to the property covered by the lift stay" on the doctrine of laches.

3.  The bankruptcy court erred in basing its dismissal "with respect to the property covered by the lift stay" on the doctrine of res judicata.

4.  The bankruptcy court erred in basing its dismissal order "with respect to the property covered by the lift stay" on the lift stay order.

5.  The bankruptcy court erred in basing its decision on the lack of events that would satisfy Rule 60(b) being pled.

6.  The bankruptcy court erred in basing its dismissal of the easement matter on the basis of laches.

7.   The bankruptcy court erred in basing its dismissal of the easement matter on the basis of res judicata.

8.   The bankruptcy court erred in basing its dismissal of the easement matter on a lift stay order.

9.   The bankruptcy court erred in basing its decision of the easement matter on the lack of events that would satisfy Rule 60(b) being pled.

10.  The bankruptcy court erred in basing its dismissal order on the "with respect to the property covered by the lift stay" [sic] is homestead of the debtor.

11.  The bankruptcy court erred by ignoring and not permitting the debtor's argument to the court on the issue of the release of lien even though the argument of Amegy was considered.

12.  The bankruptcy court did not have jurisdiction to consider the motion to dismiss.

(Opening Br. at 10–11.)  Although Colvin proffers twelve issues for this Court's review, Colvin's claims can be distilled into three arguments: (1) the bankruptcy court lacked jurisdiction and adjudicative authority to dismiss the avoidance and easement claims; (2) the bankruptcy court could not rely on the doctrine of res judicata to dismiss Colvin's avoidance claim because he was not required to assert such a claim during the earlier lift stay proceedings; (3) the bankruptcy court could not rely on the doctrine of res judicata to dismiss Colvin's easement claim because the order dismissing Adversary Proceeding I with prejudice was subject to review under Rule 60.

10

I.    Did the Bankruptcy Court Have Jurisdiction and Adjudicative Authority to Issue a Final Order on Colvin's Avoidance and Easement Claims?

The Court begins by noting that the parties' arguments on bankruptcy court jurisdiction could have been more on point and do not aid this Court's jurisdictional analysis.  For example, Colvin does not address whether the bankruptcy court had jurisdiction or adjudicative authority over his avoidance claim.  Instead, in a one-paragraph argument, Colvin only attacks the bankruptcy court's jurisdiction over his easement claim, arguing that bankruptcy courts do not have jurisdiction to rule on matters of state law.  (Opening Br. at 30–31.) However, the Fifth Circuit has explained that "the distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings" because "the bankruptcy judge is constantly enmeshed in state-law issues."  In re Wood, 825 F.2d 90, 96 (5th Cir. 1987).

Amegy counters that bankruptcy court jurisdiction is proper because "[i]n opting to litigate before the Bankruptcy Court and pleading jurisdiction, Colvin consented to the Bankruptcy Court's entry of a final judgment in this matter and has waived his right to challenge jurisdiction under Stern v. Marshall, 131 S. Ct. 2594 (2011)."  (Answering Br. at 21–22.)  But that argument is flawed for several reasons.  First, "[i]t is well-settled, however, that the subject-matter jurisdiction of a federal court can be challenged at any stage of the litigation

11

(including for the first time on appeal), even by the party who first invoked it." In re Canion, 196 F.3d 579, 585 (5th Cir. 1999); accord Kontrick v. Ryan, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."). Additionally, Stern dealt with a bankruptcy court's adjudicative power to issue a final order under 28 U.S.C. § 157—not a bankruptcy court's subject-matter jurisdiction, 131 S. Ct. at 2611–20, and that statute clearly requires that both parties consent for a bankruptcy court to enter a final order, 28 U.S.C. §157(c)(2); see also In re OCA, Inc., 551 F.3d 359, 368 (5th Cir. 2008) ("In a non-core proceeding, the parties may consent to have a bankruptcy court 'enter appropriate orders and judgments.'" (quoting 28 U.S.C. § 157(c)(2))). Here, Amegy's Motion to Dismiss contested the bankruptcy court's adjudicative authority and averred that Amegy did not consent to a final adjudication by that court. (Adversary II Dkt. # 16 ¶¶ 33–34.)

Although the parties' briefing on the bankruptcy court's jurisdiction could have been more on point, this Court is obligated to raise the matter sua sponte. In re Stonebridge Techs., Inc., 430 F.3d 260, 265 (5th Cir. 2005); accord In re Camp Arrowhead, Ltd., 451 B.R. 678, 694 (Bankr. W.D. Tex. 2011) (Clark, J.) (holding that bankruptcy court jurisdiction "can be considered by a court on a

sua sponte basis").  As such, the Court will independently examine whether the bankruptcy court had subject-matter jurisdiction over Colvin's avoidance and easement claims and if it did, whether the bankruptcy court was constitutionally entitled to enter a final order adjudicating his claims.  See In re OCA, Inc., 551 F.3d at 367 (outlining the two-step inquiry, which includes whether the bankruptcy court had subject-matter jurisdiction and the extent of its judicial power to enter final order).

    A.    <u>The Bankruptcy Court's Subject-Matter Jurisdiction</u>

        The starting point to resolving whether a bankruptcy court has subject-matter jurisdiction is 28 U.S.C. § 1334.  That section grants jurisdiction to district courts in all civil proceedings "arising under title 11 [the Bankruptcy Code], or arising in, or related to cases under title 11."  The district courts may, in turn, refer any or all proceedings "arising under title 11" or "arising in" or "related to a case under title 11" to the bankruptcy judges for the district.  28 U.S.C. § 157(a).  In the Western District of Texas, the district court has in fact referred all of these matters to the bankruptcy judges for the district.  See Order No. 84-01, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc (Aug. 13, 1984); accord Order No. 13-01, Order of Reference of Bankruptcy Cases and Proceedings (Oct. 4, 2013).

As extensions of the district courts, bankruptcy courts are authorized to hear three categories of civil proceedings ancillary to underlying bankruptcy cases: (1) those "arising under title 11," (2) those "arising in . . . a case under title 11," and (3) those that are "related to a case under title 11."  28 U.S.C. § 1334(b); 28 U.S.C. § 157(a); Stern, 131 S. Ct. at 2603.  The Fifth Circuit in In re Wood described the first two categories:

> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11. . . .  The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise only in bankruptcy cases.  In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

825 F.2d at 96–97.  For the third category, the Fifth Circuit follows the Third Circuit's "related to" test: "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedoms of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Id. at 93 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).  The "related to" category of cases is quite broad and includes proceedings in which the outcome "could conceivably have any effect on the estate being administered in bankruptcy."  In re Canion, 196 F.3d at 585 (quoting Pacor, 743 F.2d at 994).  "Certainty or even likelihood of such an

14

effect is not a requirement." Id. at 587 n.30.

However, when a bankruptcy plan has been confirmed by the bankruptcy court, the scope of a bankruptcy court's subject-matter jurisdiction is circumscribed.  Despite the fact that "[s]ection 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation," In re Brass Corp., 301 F.3d 296, 304 (5th Cir. 2002), the Fifth Circuit adheres to a "more exacting theory of post-confirmation bankruptcy jurisdiction": "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."  In re Craig's Stores of Tex., Inc., 266 F.3d 388, 390–91 (5th Cir. 2001).

With this jurisdictional framework in mind, the Court turns to its analysis regarding whether the bankruptcy court had post-confirmation jurisdiction in the Second Adversary Proceeding.  As a preliminary matter, the Court notes that neither party has made any effort to distinguish between the types of claims asserted in the Second Adversary Proceeding (i.e., Colvin's avoidance claim asserted under § 547 of the Bankruptcy Code and his state-law easement claim) as they may relate to the bankruptcy court's post-confirmation subject-matter jurisdiction.  However, the Court believes that such distinctions are appropriate and will address each claim separately.

15

1.     Avoidance Claim

Although the bankruptcy court would have clearly had subject-matter jurisdiction over Colvin's avoidance claim at the outset, see In re Raihl, 152 B.R. 615, 619 n.6 (B.A.P. 9th Cir. 1993) ("The bankruptcy court clearly has jurisdiction to deal with a debtor's avoidance of a lien on exempted property."), the post-confirmation posture of Colvin's second adversary proceeding asserting the avoidance complicates the jurisdictional analysis.

When the Fifth Circuit held that the bankruptcy court lacked subject-matter jurisdiction over the breach-of-contract action in Craig's Stores because the bankruptcy court had already confirmed the debtor's bankruptcy plan, the court relied on three factors: first, the claims at issue "principally dealt with post-confirmation relations between the parties;" second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the claim."  266 F.3d at 391.  Although the holding of Craig's Stores—that bankruptcy jurisdiction exists after plan confirmation only "for matters pertaining to the implementation or execution of the plan"—was somewhat broad, the facts that precipitated that holding were narrow, involving post-confirmation claims based on post-confirmation activities.

16

A year after <u>Craig's Stores</u>, the Fifth Circuit held that a

post-confirmation claim based on pre-confirmation activities fell within the ambit

of post-confirmation bankruptcy court jurisdiction.  <u>U.S. Brass Corp.</u>, 301 F.3d at

304–05.  There, even though U.S. Brass's reorganization plan had been

substantially consummated, the court noted that U.S. Brass and others still had an

obligation to resolve the Shell/CAN claims (including whether or not to submit the

claims to binding arbitration), which were at the heart of the dispute.  <u>Id.</u> at 305.

The court held that the outcome of the parties' dispute "could affect the parties'

post-confirmation rights and responsibilities" and could "certainly impact

compliance with or competition of the reorganization plan."  <u>Id.</u>  Consequently, the

court determined that the bankruptcy court had jurisdiction because the dispute

"pertain[ed] to the plan's implementation or execution," and thus "satisfie[d] the

<u>Craig's Stores</u> test for post-confirmation jurisdiction."  <u>Id.</u>

　　　　　As in <u>U.S. Brass Corp.</u>, Colvin's avoidance claim arose

post-confirmation, but was based on pre-confirmation activities.  In Colvin's

Chapter 12 Confirmation Plan, it included a provision addressing Amegy's

foreclosure:

> On June 7, 2011, this Court entered an Agreed Order conditioning the
> automatic stay by and between AMC [Amegy] and the captioned
> debtor related to the debt and real property that is subject of that
> Motion for Relief from Stay filed by AMC [Amegy].  The Agreed

17

> Order essentially gives the Debtor until January 3, 2012 to sell the
> 23.10 acres of real property that Colvin has claimed as his homestead.
> The Agreed Order states that if AMC [Amegy] is not paid in full prior
> to January 3, 2012, AMC [Amegy] is allowed to proceed with a
> non-judicial foreclosure sale that will be noticed and scheduled for
> January 3, 2012.

(Bankr. Dkt. # 137 at 4.)  On December 8, 2011, the bankruptcy court adopted the

confirmation plan.  (Bankr. Dkt. # 146.)  Eleven months later on October 19, 2012,

Colvin amended his second adversary proceeding complaint, asserting his

avoidance claim under 11 U.S.C. § 547 to circumvent the earlier pre-confirmation,

agreed-to ability to foreclose.  (Adversary II Dkt. # 12.)  Given that Colvin's

avoidance claim arose post-confirmation, but involved the pre-confirmation

activities (namely, Amegy's ability to conduct a non-judicial foreclosure) and the

claim related to the implementation or execution of the plan's contemplated

non-judicial foreclosure, the bankruptcy court had subject-matter jurisdiction to

adjudicate Colvin's avoidance claim pursuant to U.S. Brass Corp.

        In any event, the bankruptcy court may have had subject-matter

jurisdiction over the avoidance claim because there has been some recent

suggestion that the "more exacting theory of post-confirmation bankruptcy

jurisdiction" is limited to claims that were merely "related to" the underlying

bankruptcy and not those "arising under" or "arising in" title 11.  See In re

Heritage Org., L.L.C., 454 B.R. 353, 364–65 (Bankr. N.D. Tex. 2011) ("[T]he

Court believes that the narrow test for post-confirmation jurisdiction as applied in Craig's Stores and its progeny was articulated in the context of proceedings which were merely 'related to' a case under title 11—and not in proceedings which either 'arose under' or 'arose in' a case under title 11.").  If that were indeed the case, the bankruptcy court would have had jurisdiction over Colvin's § 547 avoidance claim because it clearly "arises under" title 11 as discussed infra.  See 11 U.S.C. § 547.

2.   Easement Claim

Colvin's easement claim, however, presents a different scenario as that claim arose post-confirmation, involved post-confirmation activities (or at least, did not involve pre-confirmation activities) and did not relate to his Chapter 12 Plan of Reorganization.  Contrary to U.S. Brass Corp., Colvin's easement claim is similar to the breach-of-contract claim in Craig's Stores.  There, the debtor, Craig's Stores, did business with the Bank of Louisiana since 1989, using the Bank to administer Craig's in-house private label credit card program.  In re Craig's Stores of Tex., Inc., 266 F.3d at 389.  The parties' complex arrangement continued after Craig's Stores sought Chapter 11 bankruptcy protection in 1993, and their contract was assumed as part of Craig's reorganization plan confirmed in December 1994.  Id.  Eighteen months after the plan's confirmation, Craig's sued the Bank in bankruptcy court, asserting state-law claims for damages alleged to

19

have arisen in 1994 and 1995—after Craig's reorganization plan had been

confirmed.  Id.  On appeal, the Fifth Circuit explained that Craig's claim against

the Bank principally dealt with post-confirmation relations between the parties:

> There was no antagonism or claim pending between the parties as of
> the date of the reorganization.  The fact that the account management
> contract existed throughout the reorganization and was, by
> implication, assumed as part of the plan is of no special significance.
> And even if such circumstances might bear on post-confirmation
> bankruptcy court jurisdiction, no facts or law deriving from the
> reorganization or the plan was necessary to the claim asserted by
> Craig's against the Bank.  Finally, while Craig's insists that the status
> of its contract with the Bank will affect its distribution to creditors
> under the plan, the same could be said of any other post-confirmation
> contractual relations in which Craig's is engaged.

Id. at 391.  "In sum," the court held, "the state law causes of action asserted by

Craig's against the Bank do not bear on the interpretation or execution of the

debtor's plan and therefore do not fall within the bankruptcy court's

post-confirmation jurisdiction."  Id.

        Much like Craig's breach-of-contract claim, Colvin's easement claim

did not implicate the interpretation or execution of his Chapter 12 Plan of

Reorganization.  Instead, this was a state-law claim entirely independent of

Colvin's reorganization plan—indeed, it was entirely independent of Colvin's

bankruptcy.  It arose post-confirmation and did not involve any pre-confirmation

activities.  Under the Fifth Circuit's "more exacting theory of post-confirmation

bankruptcy jurisdiction," id., the bankruptcy court did not have post-confirmation subject-matter jurisdiction over Colvin's easement claim and should have dismissed the action for that very reason.  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); see also Giannakos v. M/V Bravo Trader, 762 F.2d 1295, 1297 (5th Cir. 1985) ("United States District Courts . . . have the responsibility to consider the question of subject matter jurisdiction sua sponte if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking.").

Because the bankruptcy court lacked jurisdiction to adjudicate Colvin's easement claim, it lacked jurisdiction to dismiss the claim.  Accordingly, the Court **VACATES** the judgment of the bankruptcy court and **REMANDS** to the bankruptcy court with instructions to dismiss Colvin's easement claim for lack of subject-matter jurisdiction.

B.    Adjudicatory Power

A separate question from whether a bankruptcy court has subject-matter jurisdiction—but one that is often confused with it—is whether the court has constitutional power to enter a final order in a proceeding.  Because the bankruptcy court lacked subject-matter jurisdiction over Colvin's easement claim, but concluded that the bankruptcy court did have subject-matter jurisdiction over

21

his avoidance claim, the Court will only address whether the bankruptcy court had the constitutional power to enter a final order adjudicating Colvin's avoidance claim.

To avoid certain constitutional problems with Article I bankruptcy judges adjudicating "private rights" reserved for Article III judges, see Northern Pipeline Construction Co. v. Marathon Pipe Line Co. ("Marathon"), 458 U.S. 50 (1982), Congress passed 28 U.S.C. § 157, providing bankruptcy courts with statutory authority to adjudicate "core"[6] proceedings (i.e., proceedings which invoke a substantive right by the federal bankruptcy law) and "non-core" proceedings, the latter of which constrains a bankruptcy court's adjudicative authority.  28 U.S.C. § 157(b)–(c).

Core proceedings include both of the first two categories described above: matters which "arise in a bankruptcy case or under Title 11."  A "core" proceeding is generally defined as a proceeding which either invokes a substantive bankruptcy right or is one that could not exist outside of bankruptcy, that is, one that either arises under or arises in a bankruptcy case.  In re Wood, 825 F.2d at 97. The Fifth Circuit in In re Wood succinctly stated the rule:

---

[6] The "core" reference is taken directly from Justice Brennan's description of matters that involve the peculiar powers of bankruptcy courts in Marathon.  In re Wood, 825 F.2d at 96.

22

If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference.  If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt.  If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

Id.  A non-exhaustive list of "core proceedings" appears in 28 U.S.C. § 157(b)(2).[7]

---

[7] In full, § 157(b)(1)–(2) provides:

"(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
"(2) Core proceedings include, but are not limited to—
     "(A) matters concerning the administration of the estate;
     "(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
     "(C) counterclaims by the estate against persons filing claims against the estate;
"(D) orders in respect to obtaining credit;
"(E) orders to turn over property of the estate;
"(F) proceedings to determine, avoid, or recover preferences;
"(G) motions to terminate, annul, or modify the automatic stay;
"(H) proceedings to determine, avoid, or recover fraudulent conveyances;
"(I) determinations as to the dischargeability of particular debts;
"(J) objections to discharges;

23

If the matter is a core proceeding, the bankruptcy court can exercise full judicial power and enter final orders and judgments.  28 U.S.C. § 157(b)(1).  In a core proceeding, an aggrieved party may appeal the judgment of the bankruptcy court to the district court, which applies a de novo standard of review to the conclusions of law and the clearly-erroneous standard to findings of fact.  28 U.S.C. § 158(a).

Non-core proceedings are those that fall into the third category of bankruptcy jurisdiction: those that are simply "related to" the underlying bankruptcy case.  Stern, 131 S. Ct. at 2605 ("The terms 'non-core' and 'related' are synonymous.") (quoting Collier on Bankruptcy ¶ 3.02[2], p. 3–26, n.5 (16th ed. 2010)).  If the matter is a non-core proceeding, the bankruptcy judge has the limited power to hear the case and must submit proposed findings of fact and conclusions of law to the district court.  28 U.S.C. § 157(c)(2).

---

"(K) determinations of the validity, extent, or priority of liens;
"(L) confirmations of plans;
"(M) orders approving the use or lease of property, including the use of cash collateral;
"(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
"(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
"(P) recognition of foreign proceedings and other matters under chapter 15 of title 11."

1.     <u>Avoidance Claim</u>

As mentioned above, Colvin sought to avoid the transfer of his interest in the Home Tract to Amegy pursuant to 11 U.S.C. § 547, a provision that allows a trustee to avoid any transfer of interest of the debtor in the property under a certain set of conditions.  An action to avoid a preferential transfer is a core proceeding.  <u>See, e.g.</u>, 28 U.S.C. § 157(b)(2)(F) ("Core proceedings include, but are not limited to—proceedings to determine, avoid, or recover preferences . . . ."); <u>accord</u> <u>In re Insilco Techs., Inc.</u>, 330 B.R. 512, 519–20 (Bankr. D. Del. 2005) (holding that an avoidance claim under § 547 "easily fall[s] within the core proceedings described in § 157(b)(2)(F)"); <u>In re Wood</u>, 825 F.2d at 97 ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference."); <u>In re White Furniture Indus. of Hudson, Inc.</u>, 88 B.R. 91, 92 (Bankr. W.D.N.C. 1987) (observing that "an adversary proceeding to avoid a preferential transfer is a case which may be resolved by the Bankruptcy Court" because it is a core proceeding under title 11).  Because Colvin's avoidance claim was a "core proceeding," the bankruptcy court was able to exercise full judicial power and enter a final order dismissing the claim.

II.    <u>Did Res Judicata Bar Colvin's Avoidance Claim?</u>

At the outset, the Court notes that it is unclear whether the bankruptcy court relied on the doctrine of res judicata in dismissing Adversary Proceeding II and thus barring Colvin's avoidance claim.  Although the court referred to the "equitable doctrine of laches," the court emphasized that it was "troubled by what appear[ed] to be an attempt to set aside previous orders," ostensibly equating Colvin's avoidance claim with an attempt to set aside the Agreed Order Terminating Stay and equating Colvin's easement claim with an attempt to set aside the order dismissing Adversary Proceeding I.  (Motion to Dismiss Tr. Hr'g 24:20–22 Nov. 27, 2012.)  The court then noted, "I really think it's just too late to go back and revisit matters which were, indeed, agreed upon in one instance, and certainly adjudicated in another," again suggesting that Colvin could not reurge arguments that should have been made prior to the Agreed Order Terminating Stay and could not reurge his easement claim that had been dismissed in Adversary Proceeding I.  (<u>Id.</u> 25:4–7.)  Colvin seizes upon the court's language to now argue that the Agreed Order Terminating Stay cannot be used to bar a later claim seeking to avoid the liens that were the subject of the motion for relief from the automatic stay.  (Opening Br. at 16, 18–22.)  In other words, Colvin argues that the bankruptcy court employed a res-judicata-type analysis to bar his avoidance claim,

26

but this was in error because he was not required to assert his avoidance action during the pendency of Amegy's Motion to Lift Stay and could have asserted such an action in a later adversary proceeding.  Amegy counters that the bankruptcy court properly dismissed Colvin's avoidance claim because it was a direct defense to Amegy's Motion to Lift the Automatic Stay that "could and should have been brought during the Stay Motion proceedings," and should therefore be barred by res judicata.  (Answering Br. at 9.)  Given that both parties assert that the doctrine of res judicata is the appropriate basis for this Court's analysis, the Court will examine whether the bankruptcy court properly dismissed Colvin's avoidance claim on the basis of res judicata.

The doctrine of res judicata, read in the broadest sense of the term, embraces two distinct preclusion concepts: claim preclusion (often termed "res judicata") and issue preclusion (often referred to as "collateral estoppel").  United States v. Shanbaum, 10 F.3d 305, 310 (5th Cir. 1994).  Claim preclusion, or "pure" res judicata, is the "venerable legal canon" that insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits.  Medina v. I.N.S., 993 F.2d 499, 503 (5th Cir. 1993).  Claim preclusion is appropriate only if four conditions are satisfied:

1. The parties in a later action must be identical to (or at least be in privity with) the parties in a prior action.

27

2. The judgment in the prior action must have been rendered by a court of competent jurisdiction.

3. The prior action must have concluded with a final judgment on the merits.

4. The same claim or cause of action must be involved in both suits.

Eubanks v. Fed. Deposit Ins. Corp., 977 F.2d 166, 169 (5th Cir. 1992).  If these four conditions are satisfied, res judicata prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action.  In re Howe, 913 F.2d 1138, 1144 (5th Cir. 1990).

Issue preclusion, or collateral estoppel, in contrast, promotes the interests of judicial economy by treating specific issues of fact or law that are validly and necessarily determined between two parties as final and conclusive. Issue preclusion is appropriate only if the following four conditions are met:

1. The issue under consideration in a subsequent action must be identical to the issue litigated in a prior action.

2. The issue must have been fully and vigorously litigated in the prior action.

3. The issue must have been necessary to support the judgment in the prior case.

4. There must be no special circumstance that would render preclusion inappropriate or unfair.

Universal Am. Barge Corp. v. J-Chem, Inc., 946 F.2d 1131, 1136 (5th Cir. 1991)

28

(citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326–32 (1979)).  If these

conditions are satisfied, issue preclusion prohibits a party from seeking another

determination of the litigated issue in the subsequent action.

        Although Amegy initially frames its argument asserting that Colvin's

avoidance claim was properly barred by both concepts of res judicata, Amegy

actually only argues the third element of a res judicata claim—that Colvin should

have asserted his avoidance action during the pendency of the lift stay

proceedings—and that by foregoing the avoidance claim prior to the bankruptcy

court entering the Agreed Order Terminating Stay, Colvin's avoidance claim is

now barred by res judicata or claim preclusion.[8]  (Answering Br. at 9–12.)  Given

that Amegy's arguments relate solely to the third element of a "pure" res judicata,

or claim preclusion, analysis, it is necessary to address whether Colvin should have

asserted his avoidance claim during the lift stay proceedings.

---

[8] In any event, however, issue preclusion would not bar Colvin's avoidance claim.
As noted above, issue preclusion requires that the issue must have been necessary
to support the judgment in the prior case.  Colvin's avoidance claim under § 547
was not necessary to granting Amegy's Motion to Lift the Automatic Stay.  In re
Vitreous Steel Prods. Co., 911 F.2d 1223, 1234 (7th Cir. 1990) (holding that issue
preclusion did not bar later questions of preferential transfers under § 547 because
the issues necessarily decided at the § 362 hearing were limited to "whether the
Bank had a colorable claim of the lien and whether the amount of that lien
exceeded the value of the property" and it was not necessary to reach questions of
preferential transfers under § 547).

A.      What Is the Scope of Lift Stay Proceedings under § 362(d)?

      The analysis begins by examining the range of issues encompassed during lift stay proceedings.  As soon as a bankruptcy petition is filed, the automatic stay provisions of 11 U.S.C. § 362 take effect.  In re Lile, 103 B.R. 830, 836 (Bankr. S.D. Tex. 1989).  However, the automatic stay does not permanently prevent a party from retrieving property possessed by the debtor's estate.  In re Computer Commc'ns, Inc., 824 F.2d 725, 729 (9th Cir. 1987).  Congress authorized a provision for relief from the automatic stay to allow the bankruptcy courts to lift the stay as to specific creditors if sufficient grounds for relief are presented.  11 U.S.C. § 362(c).  These grounds include an assessment of the adequacy of protection for the creditor, the debtor's equity in the property, and the necessity of the property to an effective reorganization.  Id. § 362(d).

      By limiting the grounds for relief to a narrow set of issues, a "hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be quick."  Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26 (1st Cir. 1994).  In fact, § 362(e) requires a bankruptcy court to hold a preliminary hearing on a motion to lift the stay within thirty days from the date the motion is filed, or the stay will be considered lifted.  11 U.S.C. § 362(e).  Section 362(e) also requires that a final hearing be commenced within

thirty days after the preliminary hearing, making the entire process last sixty days,

at a maximum.  Id.; see also Bankr. R. 4001(a)(2).

The statute's legislative history confirms the limited grounds for relief

from the stay and the summary nature of the relief from stay proceedings:

> [A]t all hearings on relief from the stay, the only issue will be the
> claim of the creditor and the lack of adequate protection or existence
> of other cause for relief from the stay.  This hearing will not be the
> appropriate time at which to bring in other issues, such as
> counterclaims against the creditor on largely unrelated matters.  Those
> counterclaims are not to be handled in the summary fashion under this
> provision will be.  Rather, they will be the subject of more complete
> proceedings by the trustees to recover property of the estate or to
> object to the allowance of a claim.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 344 (1977), reprinted in 1978 U.S.

Code Cong. & Admin. News 5787, at 6300.

Considering the statute's limited grounds for relief and summary

nature, as well as the legislative history, most courts have found that hearings on

motions for relief from the automatic stay do not involve a full adjudication on the

merits of claims, defenses, or counterclaims; instead, the proceedings simply

involve a determination as to whether a creditor has a colorable claim to the

property of the estate.  Grella, 42 F.3d at 32 (citing Estate Constr. Co. v. Miller &

Smith Holding Co., Inc., 14 F.3d 213, 219 (4th Cir. 1994) (hearings to lift the stay

are summary in character, and counterclaims are not precluded later if not raised at

this stage); <u>In re Vitreous Steel Prods. Co.</u>, 911 F.2d at 1232 (questions of the validity of liens are not at issue in a § 362 hearing, but only whether there is a colorable claim on property); <u>In re Johnson</u>, 756 F.2d 738, 740 (9th Cir. 1985) (relief from stay hearings are limited in scope to adequacy of protection, equity, and necessity to an effective reorganization, and validity of underlying claims is not litigated); <u>Nat'l Westminster Bank, U.S.A. v. Ross</u>, 130 B.R. 656, 658 (Bankr. S.D.N.Y. 1991), (decision to lift stay does not involve determination of counterclaims, and thus those claims are not precluded later); <u>In re Quality Elect. Ctrs., Inc.</u>, 57 B.R. 288, 290 (Bankr. D.N.M. 1986) (relief from stay proceedings limited to whether the moving creditor has a colorable claim to a perfected security interest)).  "If a court finds that likelihood to exist, this is not a determination of the validity of those claims [to the estate], but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay."  <u>Grella</u>, 42 F.3d at 33–34.

  B. <u>Should Colvin's § 547 Avoidance Claim Have Been Litigated?</u>

    With the limited scope of § 362(d) lift stay proceedings in mind, the precise issue at hand is: whether Colvin's avoidance claim should have been litigated during the pendency of the lift stay proceedings prior to the bankruptcy court entering the Agreed Order Terminating Stay.

Colvin primarily relies on <u>D-1 Enterprises v. Commercial State Bank</u>, 864 F.2d 36 (5th Cir. 1989), to argue that the lack of raising his avoidance claim during the lift stay proceedings did not bar his efforts to avoid Amegy's lien under § 547 on the basis of res judicata. (Opening Br. at 18–22.) In <u>D-1 Enterprises</u>, the Fifth Circuit rejected the creditor's res judicata argument and allowed a debtor to bring a lender liability counterclaim after the district court had entered an agreed order lifting the automatic stay and abandoning the debtor's property to the lender. 864 F.2d at 38–39. The court's decision rested largely on the limited nature of the automatic stay proceedings, recognizing that Congress did not intend a bankruptcy court to handle counterclaims against a creditor in the summary fashion as required by the expedited nature of lift stay proceedings:

> Consistent with the legislative history, the courts have held that "indirect defenses," such as breach of contract, fraud and the like, would be severed from the expedited stay litigation if raised in an effort to defeat the creditor's motion. The lender liability claims asserted in the adversary proceeding at issue in this case were not, under the foregoing analysis, "direct defenses" that the debtor could or should have litigated in response to the creditor's motion for relief from the stay.

<u>Id.</u> The court accordingly held that D-1's lender liability counterclaims were not barred because res judicata had no application to lift stay proceedings where the counterclaims could not have been effectively litigated. <u>Id.</u> at 40.

In response, Amegy argues that Colvin's avoidance claim was a

33

"direct defense," and that under <u>D-1 Enterprises</u>, would be barred by res judicata. (Answering Br. at 9–10.)  According to Amegy, to be entitled to relief from the automatic stay, it was required to make a prima facie showing that it held a valid and perfected lien against the Home Tract and because Colvin's avoidance claim attacks the validity of the lien, it was required to be asserted during the lift stay proceedings.  (<u>Id.</u> at 9–11.)

Amegy is correct that the <u>D-1 Enterprises</u> court intimated that "direct defenses" should be litigated in response to a creditor's motion for relief from the stay, and therefore would be subject to res judicata.  864 F.2d at 39.  However, even assuming Amegy correctly noted that lift stay proceedings require considering whether the creditor has a valid, perfected lien upon the estate property,[9] a successful avoidance claim under § 547 is not a reflection of the

---

[9] There appears to be a split of authority concerning whether a movant seeking to lift the automatic stay has the burden to demonstrate the validity and perfection of its lien or whether the movant must only show that it has a colorable claim on the property.  <u>Compare</u> <u>In re Vitreous Steel Prods. Co.</u>, 911 F.2d at 1232 (questions of the validity of liens are not at issue in a § 362 hearing, but only whether there is a colorable claim on property); <u>In re Johnson</u>, 756 F.2d 738, 740 (9th Cir. 1985) (relief from stay hearings are limited in scope to adequacy of protection, equity, and necessity to an effective reorganization, and validity of underlying claims is not adjudicated), <u>with</u> <u>In re Kowalsky</u>, 235 B.R. 590, 594 (Bankr. E.D. Tex. 1999) (requiring a secured creditor who seeks relief from the automatic stay to demonstrate "that its claim is secured by a valid, perfected lien in property of the estate"); <u>Mitchell v. Fort Davis State Bank</u>, 243 S.W.3d 117, 125 (Tex. App. 2007) ("To establish a prima facie case under Section 362(d)(2), a movant must

validity of a lien, <u>In re Stangel</u>, 222 B.R. 289, 292 (Bankr. N.D. Tex. 1998) ("Validity or existence of a lien and avoidance of a lien are two different legal issues.").

Colvin misunderstands the function and utility of an avoidance claim under § 547.  An avoidance action does not dispute the validity of the lien, but rather asks whether such a transfer of a debtor's property interest was made (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debtor owed by the debtor before the transfer was made, (3) while the debtor was insolvent, (4) on or within ninety days before the date of the bankruptcy petition or between ninety days and one year before the date of the bankruptcy petition if the creditor was an insider, and (5) that enabled the creditor to receive a larger share of the bankruptcy estate than it would receive in a Chapter 7 bankruptcy case if the transfer had not been made.  11 U.S.C. § 547(b).  Only if these statutory elements, which do not include any challenges to the validity of the lien, are met may the pre-petition transfer of an interest of the debtor in the property be avoided (i.e., nullified).

Moreover, the purpose of an avoidance action is not to dispute the validity of a lien, but rather "to discourage creditors from racing to dismember a

_____

demonstrate the amount of its claim, that its claim is secured by a valid, perfected lien in property of the estate, and that the debtor lacks equity in the property.").

debtor sliding into bankruptcy and to promote equality of distribution among creditors."  <u>In re Schwartz</u>, 383 B.R. 119, 123 (B.A.P. 8th Cir. 2008); <u>In re W. World Funding, Inc.</u>, 54 B.R. 470, 474 (Bankr. D. Nev. 1985) (holding that the purpose of an avoidance action is to discourage a creditor from "racing to the courthouse" in hopes that a financially troubled debtor might avoid a bankruptcy filing by securing the cooperation of his creditors and, perhaps more importantly, "to facilitate the primary bankruptcy policy of equality of distribution of the debtor's assets" (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), <u>reprinted in</u> 1978 Code Cong. & Admin. News 5787, 6138)).

In fact, in Grella, a creditor made the same argument Amegy now advances, and the First Circuit determined such an argument was "meritless."  42 F.3d at 34.  There, the bank claimed:

> [A] determination (though not necessarily a final one) as to a creditor's security interest is an integral part of any decision regarding the lifting of the stay . . . if the creditor's security interest can be avoided for any reason, there is no cause to grant the creditor relief from stay because the creditor lacks an interest in the debtor's property.

<u>Id.</u>  In rejecting the bank's argument, the court first noted that the bank ignored the "important distinction between the consideration and adjudication of an issue."  <u>Id.</u> The court explained:

> In a relief from stay hearing, the only issue properly before the court,

36

and thus the only one actually adjudicated, is whether the stay should
be lifted because a creditor has shown a colorable claim.  Put another
way, and employing the preliminary injunction analogy discussed
above, a creditor must show a reasonable likelihood that it has a
meritorious claim, and the court may consider any defenses or
counterclaims that bear on whether this reasonable likelihood exists.
If the stay is lifted, however, what has been actually adjudicated is
only that the creditor has shown this reasonable likelihood.  It is not a
ruling on the merits of the underlying claim.

Id.

The court then underscored that the bank's argument ignored the

difference between a <u>void</u> claim or lien, and a valid yet <u>voidable</u> lien because "[a]

creditor's valid, perfected security interest in the debtor's property may

nevertheless be voidable as a preferential transfer under § 547."  <u>Id.</u>  Indeed, the

court reminded that "[a] creditor may therefore have a lien that is sufficient to

justify lifting the stay, yet ultimately avoidable by the trustee as a preferential

transfer under § 547."  <u>Id.</u>

As such, Amegy incorrectly assumes that Colvin's avoidance claim

was a "direct defense" within the meaning of <u>D-1 Enterprises</u>.  Because Colvin's

avoidance claim does not dispute the validity of Amegy's lien, but rather seeks to

avoid it under a specific set of statutory requirements outlined in the Bankruptcy

Code, Colvin was not required to assert his avoidance action during the pendency

of the lift stay proceedings and his avoidance claim is therefore not subject to res

37

judicata.

  Cases from other circuits confirm that the failure to raise an avoidance claim during the pendency of lift stay proceedings is not res judicata on a later avoidance claim asserted in an adversary proceeding.  In <u>In re Vitreous Steel Productions Co.</u>, the First Circuit held that a decision to lift the automatic stay does not preclude a subsequent prosecution of an avoidance claim under § 547.  911 F.2d at 1234.  Relying on the limited grounds set forth in the statutory language entitling a creditor to relief from the stay combined with the summary nature of the relief from stay proceedings, the court reasoned that the possible avoidability of a transfer to a creditor under § 547 is not an issue proper for adjudication by a court during a hearing on a motion to lift the automatic stay, and accordingly found that the bankruptcy court erred in barring a preferential transfer claim on the grounds of res judicata.  <u>Id.</u>

  Similarly, in <u>Grella</u>, a Chapter 7 trustee attempted to avoid a bank's unperfected security interest in property of the bankruptcy estate under § 547.  42 F.3d at 26.  Following the debtor's filing of a bankruptcy petition, the bank filed a motion for relief from the automatic stay in regard to seventeen notes that were a part of the property of the bankruptcy estate.  <u>Id.</u> at 27.  In the motion for relief from the automatic stay, the bank claimed to have a "perfected security interest"

because it was "in sole and exclusive possession" of the original seventeen notes.

Id.  The trustee did not contest the bank's motion, but stated he had not had

sufficient time to determine the existence of possible defenses to the bank's claim.

Id. at 28.  After a hearing, the bankruptcy court granted the bank's motion and

lifted the stay in regard to the notes.  Id.  In neither the hearing nor the order did

the bankruptcy court make any findings about the status of the bank's security

interest.  Id.

The bank later filed an adversary proceeding to determine the validity

of its lien, alleging for the second time that it had a perfected security interest in

the seventeen notes because it was in sole and exclusive possession of the

originals.  Id. at 19.  The trustee filed an answer and counterclaim against the bank

asserting that its interest in one of the notes was avoidable as a preferential transfer

under § 547.  Id.  In opposing the trustee's counterclaim, the bank argued that the

trustee was barred from pursuing his avoidance claim based on either res judicata

or issue preclusion because the trustee had not objected to the bank's motion for

relief from the automatic stay, and because the validity of the bank's security

interest had been decided when the bankruptcy court granted relief from the

automatic stay.  Id.

The First Circuit adhered to the Seventh Circuit's holding in In re

39

Vitreous Steel Productions Co., resolving that a determination on a motion for relief from an automatic stay is limited in scope and does not have preclusive effect on a subsequent avoidance claim.[10]  Id.  The court of appeals first noted the summary nature of lift stay proceedings.  Id. at 31–32 ("[T]he hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be quick. . . . [S]uch hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims . . . ."); see also id. at 32 ("This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters." (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 344 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, at 6300)).

The court also observed that the Bankruptcy Rules distinguish a motion for relief from the automatic stay from a preferential transfer claim, noting:

Relief from the stay is obtained by a simple motion.  Fed. R. Bankr. P. 4001, and it is a "contested matter," rather than an adversary proceeding.  Fed. R. Bankr. P. 9014.  See Advisory Committee Note

[10] Although the Grella court's analysis was in the context of an issue preclusion analysis and answered whether avoidance issue "must have been actually litigated" during the lift stay proceedings, the court's analysis is still probative regarding whether Colvin should have asserted his avoidance claim during the lift stay proceeding.  See Browning v. Levy, 283 F.3d 761, 771–72 (6th Cir. 2002) (explaining that before deciding what claims "should have been brought" in a prior action, a court "must first consider whether those claims could have been brought in that forum" under an issue preclusion analysis).

to Fed. R. Bankr. P. 7001 ("[R]equests for relief from the automatic stay do not commence an adversary proceeding.").  In contrast, all actions to determine the validity of a lien, such as a preference action under § 547, require full adjudication on verified pleadings, and must be litigated in adversary proceedings.  Fed. R. Bankr. P. 7001.  To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale adversary lawsuit . . . and would be inconsistent with this procedural scheme.

Id. at 33.

After reflecting on the statutory and procedural schemes and the legislative history, the court concluded that "a hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses or counterclaims."  Id.  Rather, the court analogized lift stay proceedings to a temporary restraining order, wherein a bankruptcy court determines whether there is a reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property and, if so, allows the creditor to litigate its substantive claims elsewhere without violating the automatic stay.  Id. at 33–34.  The court ultimately held that the bankruptcy court's order lifting the automatic stay did not have a preclusive effect on the trustee's avoidance counterclaims:

The only issue properly before the court during that hearing was whether the Bank's claim was colorable, or sufficiently plausible, to lift the stay.  The court did not, and indeed, could not adjudicate the substantive merits of either the Bank's claim, or any possible defenses or counterclaims.  Thus, the issue raised by the Trustee's preference counterclaim was not before the court at the relief from stay hearing,

41

was not actually (or even implicitly) litigated, and was not essential to
the court's decision to lift the stay.

Id. at 35.

Likewise, in In re Lebbos, a trustee's preferential transfer and

avoidance claims in an adversary proceeding were not barred on res judicata

grounds when the trustee had not opposed or otherwise responded to the bank's

motion for relief from the automatic stay in the prior bankruptcy proceeding.  455

B.R. 607, 610, 614–16 (Bankr. E.D. Mich. 2011).  Central to the Lebbos court's

holding was that the third element of the res judicata analysis was not satisfied, that

is, whether the issues raised in the adversary proceeding by the trustee were

litigated or should have been litigated at the time the bank moved for relief from

the automatic stay.  Id. at 612.  Finding the facts and reasoning of the Grella court

persuasive, id. at 614, the Lebbos court noted that while the trustee could have

asserted his preferential transfer and avoidance claims as counterclaims to the

bank's motion for relief from the automatic stay, the trustee was not required to do

so, nor was the bankruptcy court required to rule on such claims, id. at 615.  As

determined by the Lebbos court,

> [A]ny determination under § 362(d) is narrowly limited to whether a
> creditor has a colorable claim against property of the estate. Any
> decision [on whether the stay should be lifted] would be made solely
> on the statutory grounds expressed in § 362(d).  The possible
> avoidability of a transfer . . . or a lien avoidance action . . .  [is]

42

beyond the scope of a court's limited inquiry under § 362(d).

Id. (citing Grella, 42 F.3d at 32, In re Vitreous Steel Prods. Co., 911 F.2d at 1234

(noting that questions of preferential transfers are not generally at issue in a § 362

hearing, but only whether there is a colorable claim on property)).  Applying the

reasoning of Grella, the Lebbos court found no preclusive effect on the avoidance

issues raised by the trustee in the adversary proceeding.  Id. at 614.

> Although the Fifth Circuit has not specifically addressed whether an

avoidance claim should be asserted during lift stay proceedings or risk later

preclusion, the D-1 Enterprises court discussed in dicta a district court case, which

had held that the debtor was not required to bring its preference claims under § 547

in response to a motion to lift the stay and that its preference claims could be

independently pursued two years later.  864 F.2d at 40 (discussing In re Torco

Equip. Co., 65 B.R. 353 (W.D. Ky. 1986)).  In In re Torco Equipment Co., the

debtor brought an adversary action seeking to avoid an allegedly preferential

transfer against a creditor.  65 B.R. at 353–54.  More than two years earlier and not

long after the bankruptcy petition was filed, the same creditor had succeeded in

having the stay lifted and had foreclosed upon certain collateral.  Id. at 354.  The

bankruptcy court and district court agreed that res judicata did not bar the

avoidance action.  Id. at 354–55.

As <u>In re Vitreous Steel Prods. Co.</u>, <u>Grella</u>, <u>In re Lebbos</u>, and <u>In re Torco Equipment Co.</u> confirm, Colvin was not required to assert his avoidance action during the pendency of the lift stay proceedings and therefore the third element of res judicata—whether an issue exists in the subsequent action which was litigated or which should have been litigated in the prior action—is not satisfied.  The issues involved in lift stay proceedings are limited in scope.  In effect, the lift stay proceedings function like a preliminary injunction hearing, "requiring a speedy and necessarily cursory determination of the reasonably likelihood that a creditor has a legitimate claim or lien as to a debtor's property." <u>Grella</u>, 42 F.3d at 33.  A lift stay proceeding is not a proceeding to determine the underlying merits of a debtor's counterclaims or defenses, including an avoidance claim under § 547.  <u>In re Lebbos</u>, 455 B.R. at 615 ("The possible avoidability of a transfer under § 547 . . . [is] beyond the scope of the court's limited inquiry under § 362(d).").  Indeed, the Bankruptcy Rules specifically contemplate that those issues should be decided at a later adversary proceeding, as was specifically done in this case.  <u>Grella</u>, 42 F.3d at 33 ("[A]ll actions to determine the validity of a lien, such as a preference action under § 547, require full adjudication on verified pleadings, and must be litigated in adversary proceedings." (citing Fed. R. Bankr. P. 7001)).  Accordingly, Colvin was not required to bring his avoidance claim

44

during the context of the lift stay proceedings and was permitted to assert his avoidance claim in a subsequent adversary proceeding.  The bankruptcy court erred in barring Colvin's avoidance claim on the basis of res judicata.

To be sure however, although Colvin was not required to bring his avoidance claim in the context of the lift stay proceedings, Colvin (or his trustee) could have brought the claim at that time.  See, e.g., In re Lebbos, 455 B.R. at 614 ("[I]t is entirely appropriate for a party . . . to raise a defense or counterclaim in response to a motion for relief from the automatic stay."); Grella, 42 F.3d at 34 ("This is not to say that bankruptcy court can never consider counterclaims and defenses, including preference counterclaims, during a relief from stay hearing."); In re Installation Servs., Inc., 101 B.R. 282, 285 (Bankr. N.D. Ala. 1989) (allowing atrustee to attempt to recover preferential payments to the Bank by counterclaim to the Bank's lift stay motion); see also S. Rep. No. 95-989, 95th Cong., 2d Sess. 55, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, at 5841 ("However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion.").  Nevertheless, solely because the bankruptcy court could have considered Colvin's avoidance claim during a relief from stay hearing does not warrant barring his claim asserted at a later adversary proceeding on the basis of

res judicata.  See In re Gellert, 55 B.R. 970, 974–75 (Bankr. D.N.H. 1985) (holding

that although a bankruptcy court may consider counterclaims during a relief from

stay hearing, it is not authorized to a res judicata determination of such claims on

their merits).

   In fact, even if Colvin raised his avoidance claim during the lift stay

proceedings, the bankruptcy court could only consider such a claim in the context

of determining whether to grant or deny Amegy's request for relief from the

automatic stay because the entire purpose of lift stay proceedings is to determine

whether to lift the stay.  See In re Hubbel, 427 B.R. 789 (N.D. Cal. 2010)

(upholding the bankruptcy court's decision to deny movant relief from the

automatic stay based on its existing doubts about the validity of the movant's

security interest, which had to be determined through a later adversary proceeding

or evidentiary hearing).  Lift stay proceedings are not intended to manifest into a

substitute hearing on the merits of counterclaims and defenses like avoidance

claims.  See Grella, 42 F.3d at 33 (allowing lift stay proceedings "to become

adversary proceedings would also force untimely, expedited adjudication of

complex and critical issues during the early stages of the case . . . .  Trustees would

be forced to assert (and win) not only objections to motions for relief from stay,

but any and all possible defenses and counterclaims to the underlying claims of the

46

movant creditor, or risk being precluded from raising them later.  Bankruptcy courts would likewise be forced to determine the validity, priority, and extent of a lien during the relief from stay hearing, and the creditor's motion would thus become a 'substitute' for the normal adversary proceedings on the merits."). Although a bankruptcy court can consider an avoidance claim if it is raised during a lift stay proceeding in the context of determining whether to lift the stay, the avoidance claim itself would still need to be fully adjudicated at a later adversary proceeding.  See In re Montgomery, 262 B.R. 772, 775 (B.A.P. 8th Cir. 2001) (noting that a court has discretion under § 362(d) to consider defenses or claims to a movant's security interest but "the consideration cannot result in a preclusive adjudication on the merits of the underlying claim for avoidance"); In re Tally Well Serv., Inc., 45 B.R. 149, 151 (Bankr. E.D. Mich. 1984) (explaining that it is perfectly appropriate for a court to consider counterclaims and defenses at a preliminary hearing under § 362(d) but that "it is not the proper time or place for a full adjudication of the trustee's claims against the creditor").

C.     Does the Agreed Order Change the Analysis?

Alternatively, Amegy appears to argue that Colvin's purported acquiescence to Amegy's lien, memorialized in the bankruptcy court's Agreed Order Terminating Stay (Bankr. Dkt. # 35), foreclosed a later avoidance claim.

47

(Answering Br. at 10.)  However, <u>D-1 Enterprises</u> conclusively establishes that an agreed order permitting relief from the automatic stay "does not change the outcome."  864 F.2d at 39.  There, the Fifth Circuit reasoned that because "the [agreed] orders themselves ma[de] no reference to the claims the debtor now seeks to assert and d[id] not evidence any effort to resolve all issues between the debtor and [the creditor]," the fact that the debtor agreed to lift the stay did not later bar a counterclaim or defense asserted in a later adversary proceeding.  <u>Id.</u>

As in <u>D-1 Enterprises</u>, the Agreed Order Terminating Stay did not mention anything about an avoidance claim, a preferential transfer, or anything resembling a cause of action asserted under § 547.  Rather, the bankruptcy court only modified the stay to permit Amegy to conduct a non-judicial foreclosure sale on the Property if certain conditions were not met.  Because the Agreed Order Terminating Stay did not rule on—or even mention—an avoidance claim, and even if it did, it would have been a preliminary ruling, <u>see</u> <u>In re Hurst</u>, 409 B.R. at 83, the Agreed Order did not bar Colvin from later pursuing his avoidance claim at a subsequent adversary proceeding.

In conclusion, given that the bankruptcy court dismissed Colvin's avoidance claim under the theory that Colvin had been required to assert such a claim during the lift stay proceedings, the bankruptcy court erred.  Colvin may

assert his avoidance claim in an adversary proceeding for the bankruptcy court's adjudication.[11]

CONCLUSION

For the foregoing reasons, the Court **VACATES** the bankruptcy court's final judgment dismissing this adversary proceeding.  The Court **REMANDS** to the bankruptcy court with instructions to dismiss Colvin's easement claim for lack of subject-matter jurisdiction.  The Court also **REMANDS** to the bankruptcy court for additional proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED: San Antonio, Texas, March 28, 2014.

_____

David Alan Ezra
Senior United States Distict Judge

---

[11] Although the Court permits Colvin to bring his avoidance claim in an adversary proceeding, it emphasizes that the foregoing analysis is not a comment on the merits of his claim in any capacity.